UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF LUHR BROTHERS, INC. AS OWNER OF BARGES L-1040, L-216, L-1061, L-325, AND L-326 PRAYING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO: 05-1434 c/w 05-1897<br><br>SECTION: "J" (4) |

### ORDER AND REASONS

Before the Court is the **Motion of Luhr Bros. to Strike a Defense and Photographic Evidence of Terral Riverservice, Inc. (Rec. Doc.91).** This motion was opposed. Upon review of the record, the memoranda of counsel, and the applicable law, this Court finds, for the reasons that follow, that this motion should be denied.

### Background Facts

In the early morning hours of December 7, 2004, five barges broke away from Luhr's rock yard on the Red River near Alexandria, Louisiana, and allided with the John C. Overtone Lock and Dam.

Some time before the breakaway, Luhr had positioned spud barge L982 in the river adjacent to the upstream limit of Luhr's yard. Empty deck barge L1040 was moored to the outdrive side of

the L982.  The two spuds of the L982 held both barges in place for eight days prior to the breakaway.

It is alleged that on the day before the breakaway, Terral's towboat crew cleared four loaded Luhr barges (wired together in a two-by-two configuration) from their outdrive moorings alongside four loaded Terral barges so that Terral could unload its barges at the facility.  Thus, the crew of the M/V JOHN C. TERRAL moved the four loaded Luhr barges to the location of the L982 and L1040 barges.  Terral apparently tied four loads as a unit to the outdrive side of the L1040.  Thus, these six barges were restrained only by the L982's two spuds.  The Luhr employees left the yard on the evening of December 6, 2004 (and returned on December 7, 2004 around 6:00 a.m.); however, Terral employees remained on the Terral boat at the rock yard, which was tied off only a few hundred feet away.

During the night, the four barges that were added to the L982 broke away as a unit, and the L1040 broke away as a single unit.  All barges except the L982 drifted downstream and struck the Dam gates at about 4:00 a.m.

Luhr claims that sometime during the day on December 7, 2004, Frank Thackston, counsel for Terral, arrived at Luhr's yard to investigate the accident on behalf of Terral.  Terral's port captain, Tim Peavy, also investigated the accident and took a number of digital photographs, which constitute the subject of

this motion to strike.

## Arguments of the Parties

Luhr contends that Thackston made intentional misrepresentations regarding the time of day in which photographs of the spud barge and the positions of the spuds were taken and regarding the sequence of those photographs - all in an effort to support Terral's "locked spud" defense.[1]  Luhr asserts that the photographs, the testimony elicited concerning the photographs, and Terral's "locked spud" defense should be stricken from the record.

Luhr requested the disk on which the photographs were stored; however, there was an issue with the disk being corrupted.  Luhr claims that the electronic data with respect to the photographs was "manually altered on several occasions" between the time the pictures were taken and the time it was produced to Luhr.  Luhr also asserts that the data suggests that missing pictures may still exist.

Thackston filed a lengthy opposition, attaching several affidavits - including a 12 page affidavit of his own wherein he explains in his 39 years of practice, he has never been accused

---

[1]    Luhr claims Terral's primary defense to Luhr's assertion that Terral's boat crew caused the breakaway is that Luhr "locked"the upriver spud of barge L982 when originally positioning the barge, and as the Red River rose, the upriver spud was pulled upward by the rising water, which resulted in the breakaway.

of this sort of conduct.  Thackston explains the sequence of events just as he remembers it now (approximately two years after the incident) and claims that all representations he made during the course of the proceedings were believed to be true by him at the time he made them.  He also claims he had no ulterior motive regarding representing that the pictures were taken in the morning.  As for Luhr's claims that the electronic data on the photographs was manually altered, Thackston claims to know nothing about computers and doubts that in 2004 he even knew how to read an email sent to him on his computer - much less alter electronic metadata.

## Discussion

The photographs at issue, the testimony elicited therefrom, and Terral's "locked spud" defense will not be stricken from the record.  The Court notes that the ultimate issue regarding the photographs is not when they were taken or in what sequence they were taken, but whether they fairly and accurately depict the scene as it was immediately following the accident.  The parties may introduce relevant evidence at the upcoming bench trial to convince the court of the accuracy — or inaccuracy — of the photographs.  At this time, however, there is no valid basis on which to either exclude the photographs or to strike Terral's defense.  Accordingly,

**IT IS ORDERED** that the **Motion of Luhr Bros. to Strike a**

**Defense and Photographic Evidence of Terral Riverservice, Inc.**

**(Rec. Doc.91)** should be and hereby is **DENIED.**

New Orleans, Louisiana this 29th day of May, 2007.

*[signature]*

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE